UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BROTHERHOOD MUTUAL INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff(s), | )<br>) |
| v. | )<br>) Case No. 4:21-cv-00086-SRC<br>) |
| EVANGELICAL FREE CHURCH OF AMERICA, et al., | )<br>)<br>) |
| Defendant(s). | ) |

**Memorandum and Order**

Brotherhood seeks a declaration that it has no duty to defend the Evangelical Free Church of America, known as the EFCA, or pastor Adolf Friz against a lawsuit pending in state court. In that suit, minor John Doe levies several sexual-abuse-related claims against pastor Friz. Doe also brought a single claim against the EFCA—intentional failure to supervise clergyman Friz. To prevail against the EFCA in the underlying suit, Doe must prove that the EFCA knew that harm was certain to result from its alleged intentional failure to supervise Friz. Brotherhood's policy explicitly excludes coverage for loss resulting from intentional acts, and Brotherhood therefore has no duty to defend or indemnify the EFCA. Brotherhood nonetheless may owe Friz a duty of defense under the policy, but because the parties did not brief that issue, the Court leaves it for another day.

**I.    Background**

**A.    The underlying lawsuit**

The Court provides the following undisputed factual allegations for purposes of this Order. Doe filed a lawsuit in state court against his pastor, Friz, the EFCA, and others, in

1

October 2020.  Doc. 1-1.  Doe alleges that Friz groomed him for future sexual abuse beginning in late 2008 when Doe was thirteen years old and continuing through 2010.  *Id.* at ¶ 42.  Doe alleges that Friz groomed him by complimenting and touching him, and by hugging him "for peculiarly long periods of time."  *Id.* at ¶ 45.  After this, Doe alleges that, in December 2009, Friz molested him by engaging "in sexual misconduct, touching groping and fondling [his] body and genitals through his clothes."  *Id.* at ¶¶ 42, 45.  Friz has denied that he assaulted Doe.  Friz Answer at ¶¶ 44, 45, 47, *Doe v. Friz*, No. 20SL-CC05266 (St. Louis Cnty. Cir. Ct. Dec. 17, 2020).  Doe further alleges that the EFCA "knew that harm was certain or substantially certain to result from its failure to supervise Friz."  Doc. 1-1 at ¶ 84.  The EFCA denies all the "allegations of knowledge and liability asserted by Doe."  Doc. 43 at p. 3; Doc. 20 at ¶¶ 18–21, 35, 50, 70.  The EFCA also denies any employer-employee relationship with Friz.  Doc. 20 at ¶¶ 18–21, 35, 50, 70.

Doe brought four counts in his state-court lawsuit:  1) sexual battery against Friz; 2) childhood sexual abuse against Friz; 3) negligence per se against Friz; and 4) intentional failure to supervise clergy against the EFCA, the regional EFCA district, the local EFCA church itself, as well as individual members of the congregation's church council.

**B.** **The insurance dispute**

Brotherhood issued an insurance policy to the EFCA with multiple coverages; the general commercial liability coverage included additional coverage for sexual acts.  In this case, Brotherhood seeks declaratory judgments on various issues:  in count 1, that it has no obligation to defend or indemnify the EFCA in the underlying lawsuit because the only count levied against the EFCA in the underlying lawsuit is necessarily excluded from coverage by the expected-or-intended exclusion in the policy; in count 2, that it has no obligation to defend or indemnify the

EFCA in the underlying lawsuit because the events giving rise to the underlying lawsuit began before the policy period began; in counts 3, 4, and 5, that it has no obligation to defend or indemnify Friz because of various exceptions set out in the policy; and in count 6, that it is entitled to recover from Zurich all amounts it has paid in defense of the underlying lawsuit.

After all defendants answered the complaint, Docs. 10, 12, 20, 28, Brotherhood moved for judgment on the pleadings.  Doc. 33.  The Court notes that Friz did not file an opposition to the motion but the Church and Doe did, and Brotherhood filed a reply.  Docs. 43–44, 49.  In the motion, Brotherhood did not clearly articulate the specific counts on which it seeks judgment, but its motion only seeks declarations against the EFCA and Friz.  Its brief also does not address its claim in count 6 against Zurich, presumably explaining why Zurich did not respond to the motion.  For this reason, to the extent Brotherhood seeks judgment on count 6, the Court denies the motion without prejudice.

    **C.**    **The policy**

This case centers on the sexual-acts-liability coverage, which obligates Brotherhood to

> pay all sums which a **covered person** becomes legally obligated to pay as **damages** due to **bodily injury**, **personal injury** or **emotional injury** to which this coverage applies.  The event or events causing the **bodily injury** or **emotional injury**[ ] must constitute a **sexual act** arising out of the operation of **your** organization; and must take place in the **coverage territory** during [t]he **policy period**.

Doc. 1-2 at p. 163.

For purposes of the motion, Brotherhood concedes that Friz comes within the definition of "covered person," that the acts Doe alleges are "sexual acts" within the meaning of the policy, and that the alleged acts took place in the coverage territory during the policy period.  Doc. 34 at pp. 3, 12–13.

However, many exclusions apply to this coverage.  Some exclusions apply only to the sexual-acts-liability coverage, and these appear on the sexual-acts-liability-coverage form itself, but the coverage form also incorporates various exclusions from other parts of the policy.  For example, the top of the sexual-acts-liability-coverage form includes a text box set off from all of the other text; in that box, a disclaimer appears, stating that the coverage "is subject to the **terms of**" other coverages, and the text box includes in bold and all caps "**PLEASE READ THIS CAREFULLY**[.]"  Doc. 1-2 at p. 163.

Similar language appears for a second time at the top of the list of exclusions on the sexual-acts-liability-coverage form:

> Each of the exclusions set forth in the Exclusions section of the Commercial Liability Coverage Form (GL-100) and the Liability and Medical Coverage Form (BGL-11) apply to each of the Additional Coverages provided by this endorsement, unless otherwise modified herein.

*Id.* at p. 166.

One of the exclusions listed on form BGL-11 excludes "**loss** of any kind that is expected by, directed by, or intended by any **insured** or by any **covered person**."  *Id.* at p. 235.  The parties have termed this the expected-or-intended exclusion, and they dispute whether this exclusion applies at all to the sexual-acts-liability coverage.  If the exclusion applies, the parties further dispute whether it excludes coverage in this case.

**II.     Standard**

Rule 12(c) of the Federal Rules of Civil Procedure provides that after the pleadings are closed, a party may move for judgment on the pleadings.  "Judgment on the pleadings should be granted only if the moving party clearly establishes that there are no material issues of fact and that it is entitled to judgment as a matter of law." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).  A motion under Rule 12(c) is determined by the same standards

4

applied to a motion under Rule 12(b)(6). *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010).

When the plaintiff moves for judgment on the pleadings, the court accepts as true "all well-pleaded material allegations of the pleadings of the opposing party[,]" *Nationwide Mut. Ins. Co. v. Harris Med. Assocs., LLC*, 973 F. Supp. 2d 1045, 1050–51 (E.D. Mo. 2013), even if it appears that "actual proof of those facts is improbable," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The principle that a court must accept as true all of the allegations contained in the non-moving party's pleading does not apply to legal conclusions, however. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although legal conclusions can provide the framework for a pleading, the pleader must support them with factual allegations. *Id*. at 679. The court reviews the plausibility of the claim or defense "as a whole, not the plausibility of each individual allegation." *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010).

"When considering a motion for judgment on the pleadings (or a motion to dismiss under Fed. R. Civ. P. 12(b)(6)), the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint as well as materials that are necessarily embraced by the pleadings." *Porous Media Corp.*, 186 F.3d at 1079 (internal citations omitted); *see also Cent. Telecomms., Inc. v. City of Jefferson City, Mo.*, 589 F. Supp. 85, 91 (W.D. Mo. 1984) ("The scope of a court's inquiry on a Rule 12(b)(6) motion is limited to the pleadings.").

## III.     Discussion

### A.     Choice of law

The parties agree that either Minnesota or Missouri law governs the insurance-contract interpretation, and that these laws do not substantively differ, at least on the issues presented in

5

this motion. Thus, the parties advise that at this stage, the Court need not definitively determine which state's laws govern the contract. *See, e.g.*, *Williams v. Silvola*, 234 S.W.3d 396, 400 (Mo. Ct. App. 2007). The Court agrees and reserves ruling on the issue.

> **B.     Brotherhood does not owe the EFCA a duty to defend or indemnify on the claim against the church in the underlying suit**

Brotherhood argues that the insurance policy does not cover acts expected, directed, or intended by the insured. Since the only claim Doe has brought against the EFCA is an intentional tort, and insurers generally owe no duty to defend when no potential for coverage of the claim asserted against the insured exists, Brotherhood argues that it owes no duty to defend or indemnify the EFCA.

The EFCA and Doe contend otherwise. First, they argue that the insurance policy's sexual-acts-liability coverage contains an ambiguity as to whether the additional coverage covers intentional acts. Second, they argue that even if the policy excludes coverage for intentional acts, Doe can prove the elements of the intentional-failure-to-supervise-clergy claim without triggering the exclusion. In other words, the EFCA and Doe argue that a potential for coverage of the claim asserted against the EFCA exists. Third, they contend that even if no duty to defend exists under a strict interpretation of the contract, the Court should order Brotherhood to defend the EFCA under the reasonable-expectations and illusory-coverage doctrines. The Court addresses these rejoinders in turn.

> **1.     The expected-or-intended exclusion applies to the sexual-acts-liability coverage**

The Court must give the language of the insurance policy its plain meaning. *Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 554 (Mo. 2014); *Gen. Cas. Co. of Wis. v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 575 (Minn. 2009). However, if the contract contains ambiguities, the

6

Court must construe them against the insured and in favor of coverage. *Wozniak*, 762 N.W.2d at 575; *Allen*, 436 S.W.3d at 554. Further, the Court must find a policy provision ambiguous if it is susceptible to more than one reasonable interpretation. *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210 (Mo. 1992); *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013). However, the Court enforces unambiguous policy language as written. *Allen*, 436 S.W.3d at 554.

Brotherhood relies on the plain text of the insurance policy to argue that the sexual-acts liability coverage is subject to not only the exclusions explicitly stated on the sexual-acts-liability-coverage form, but also the expected-or-intended exclusion included on the commercial-liability-coverage form and the liability-and-medical-coverage form. The policy twice notes that the sexual-acts liability coverage is subject to these additional restrictions, and it does so with conspicuous language. The policy notes both at the top of the first page of the sexual-acts-liability-coverage form and at the top of the exclusions section of the sexual-acts-liability-coverage form that these additional exclusions apply. *See* Doc. 1-2 at pp. 163, 166.

The EFCA and Doe admit, as they must, that the plain language of the sexual-acts-liability-coverage policy incorporates the exclusions listed in the medical and liability coverage form. Doc. 43 at p. 7; Doc. 44 at p. 10. The EFCA and Doe instead argue that the expected-or-intended exclusion cannot apply because it has been modified by the exclusions listed specifically on the sexual-acts-liability-coverage form. They point out that the policy explicitly provides for this possibility. *See* Doc. 1-2 at p. 166 (the exclusions listed on the other forms apply "unless otherwise modified herein"). At the very least, the EFCA and Doe contend an ambiguity exists as to whether the policy has modified the exclusion.

The EFCA argues specifically that Brotherhood's "attempt to read the more general 'expected or intended' exclusion—which is not attached to the specific coverage form at issue— as an overlay on the coverage afforded" by the sexual-acts-liability coverage is an ambiguous inconsistency.  Doc. 43 at p. 8.  The EFCA cites *Nationwide Ins. Co. of Am. v. Thomas*, 487 S.W.3d 9, 12, 14 (Mo. Ct. App. 2016), for the claim that an insurance "contract that promises something at one point and takes it away at another is ambiguous."  These arguments fall flat against the plain language of the insurance agreement.

First, the sexual-acts-liability coverage does not modify the expected-or-intended exclusion.  The parties do not point to any language in the policy that purports to modify the expected-or-intended exclusion.  And Doe's argument that modification "necessarily occurs" when the insured adds additional coverages to the general policy fails.  Doc. 44 at p. 10.  While the additional coverages do bring additional benefits, conditions, and exclusions, the plain language of the sexual-acts-liability-coverage form nonetheless explicitly incorporates the expected-or-intended exclusion.  Reading the policy as the EFCA urges would render this explicit incorporation meaningless, which the Court must avoid.  *See Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 526 (Minn. 1990) ("Because of the presumption that the parties intended the language used to have effect," the Court "avoid[s] an interpretation of the contract that would render a provision meaningless.").  The Court notes that the sexual-acts-liability-coverage form explicitly modifies *other* exclusions.  For example, the first exclusion on the sexual-acts-liability-coverage form states that "[e]xclusion 12c. of the . . . Commercial Liability Coverage Form (GL-100) is modified to the extent that coverage is otherwise provided herein."  Doc. 1-2 at p. 166.  This fact buttresses the Court's conclusion that the sexual-acts-liability-

8

coverage form does not impliedly modify the expected-or-intended exclusion. When one provision of the contract modifies another, it does so explicitly.

Second, the Court will not "create ambiguity where none exists." *King's Cove Marina, LLC v. Lambert Commercial Constr. LLC*, 958 N.W.2d 310, 318 (Minn. 2021). Applying an exception to a policy provision does not create an ambiguity. "Exclusions contained in an insurance policy are as much a part of the insurance contract as any other part," and it makes no difference if the exclusion is specific to one particular policy provision or an "overlay" on them all. *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 880 (Minn. 2002); *King's Cove*, 958 N.W.2d at 319 ("A policy's complexity does not necessarily signify ambiguity."). Courts enforce clear exclusions. *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. 2007).

The Court finds that the text of the policy plainly and unambiguously provides that the expected-or-intended exclusion applies to the sexual-acts-liability coverage. Because the expected-or-intended exclusion applies, the Court must determine whether that exclusion precludes coverage of the intentional-failure-to-supervise-clergy claim.

### 2. The policy does not cover intentional-failure-to-supervise-clergy claims

To determine whether Brotherhood has a duty to defend or indemnify the EFCA in the underlying lawsuit, the Court must interpret the insurance policy and compare its coverage terms to the allegations in Doe's complaint. *See Sletten & Brettin Orthodontics, LLC v. Cont'l Cas. Co.*, 782 F.3d 931, 934–35 (8th Cir. 2015) (applying Minnesota law). As a general rule, "[w]here the pleadings do not raise a claim arguably within the scope of coverage, the insurer has no duty to defend." *Garvis v. Emps. Mut. Cas. Co.*, 497 N.W.2d 254, 258 (Minn. 1993); *Allen*, 436 S.W.3d 548, 553 (Mo. 2014) (same). But because the Court must interpret and

9

enforce insurance policies as written, when the policy provides defense coverage even when it may not provide indemnification, the court enforces the policy as written. *See, e.g.*, *Allen*, 436 S.W.3d at 554; *Cincinnati Ins. Co. v. Franck*, 644 N.W.2d 471, 474 (Minn. Ct. App. 2002). Because the duty to defend is broader than the duty to indemnify—in that the duty to defend arises when the claim is even arguably covered by the policy—when no duty to defend exists, no duty to indemnify exists. *Wooddale Builders, Inc. v. Md. Cas. Co.*, 722 N.W.2d 283, 302 (Minn. 2006); *Allen*, 436 S.W.3d at 554.

Doe brought an intentional-failure-to-supervise-clergy claim against the EFCA. In Missouri, only claims based on intentional conduct can impose civil liability on churches for the acts of their clergy. *See Doe 122 v. Marianist Province of the U.S.*, 620 S.W.3d 73, 80–81 (Mo. 2021). The Missouri Supreme Court has held that imposing negligence liability on religious organizations for the acts of their clergy runs afoul of the First Amendment to the U.S. Constitution. *Gibson v. Brewer*, 952 S.W.2d 239, 246–47 (Mo. 1997). A plaintiff states an intentional-failure-to-supervise-clergy claim by alleging that:

> (1) a supervisor (or supervisors) exists (2) the supervisor (or supervisors) knew that harm was certain or substantially certain to result, (3) the supervisor (or supervisors) disregarded this known risk, (4) the supervisor's inaction caused damage, and (5) the other requirements of the Restatement (Second) of Torts, section 317 are met.

*Id.* at 248.

Discussing the knowledge element, the *Gibson* court stated that "[i]ntent denotes 'that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.'" *Id.* (quoting *Restatement (Second) of Torts* sec. 8A (1965)). The intent required to succeed on a *Gibson* claim is at least as exacting as the intent required for application of the expected-or-intended exclusion. "For the purposes of an

10

exclusionary clause in an insurance policy the word 'expected' denotes that the actor knew or should have known that there was a substantial probability that certain consequences will result from his actions[.]" *Diocese of Winona v. Interstate Fire & Cas. Co.*, 89 F.3d 1386, 1391 (8th Cir. 1996) (quoting *Auto-Owners Ins. Co. v. Jensen*, 667 F.2d 714, 720 (8th Cir. 1981)) (applying Minnesota law); *Elliott v. Nat'l Fire Ins. Co. of Hartford*, 922 S.W.2d 791, 793 (Mo. Ct. App. 1996) (expected-or-intended clause applied where the insured was "substantially certain that some injury to plaintiff would result").  Thus, under either Minnesota or Missouri law, the expected-or-intended exclusion prevents coverage of the intentional-failure-to-supervise-clergy claim.  Because Doe has only brought an intentional-failure-to-supervise-clergy claim against the EFCA and the policy excludes coverage of such a claim, Brotherhood has no duty to defend.

      The EFCA attempts to distinguish *Diocese of Winona* by pointing out that the court decided the case on summary judgment, and a great deal of evidence indicated that the diocese knew or should have known about the sexual abuse at issue in the case.  In that case, the record reflected that the diocese knew of eight prior cases of sexual abuse involving the priest that the plaintiff successfully sued.  89 F.3d at 1393.  In contrast, the EFCA contends that the allegations that it knew of any risk posed by Friz are perfunctory and false.  The EFCA states that, at the very least, the Court cannot make a finding as a matter of law that its "acts were indisputably intentional as to conduct and injury."  Doc. 43 at p. 12.  This argument misses the mark.  *Diocese of Winona* was decided on summary judgment because the underlying claims against the diocese were negligence claims (as allowed by Minnesota law).  In ruling on the insurance dispute, the court had to determine in the first instance whether the diocese expected the underlying abuse because intent was not an element of the underlying tort claim against the diocese.  In this case, the Court does not need to make a finding that the EFCA's acts were intentional.  Indeed,

11

whether or not the factual claims have merit, no coverage exists because *if* Doe succeeds on the intentional-failure-to-supervise-clergy claim, that *necessarily* means that Doe proved the intent that triggers the expected-or-intended exclusion.

The EFCA's citation to *Am. Family Mut. Ins. Co. v. Pacchetti*, 808 S.W.2d 369 (Mo. 1991), is likewise unavailing. Like *Diocese of Winona*, *Pacchetti* addressed whether an expected-or-intended exclusion barred coverage when a man injected a boy with cocaine. *Id.* at 370. *Pacchetti* held that for an intentional act to trigger the expected-or-intended exclusion, the insurance company had to show not only that the actor intended to do the act, but also that actor intended some harm to result from the act. However, "[t]he *Pacchetti* court was not requiring a showing that the insured intended the specific injury which resulted." *Easley v. Am. Family Mut. Ins. Co.*, 847 S.W.2d 811, 813 (Mo. Ct. App. 1992). In *Pacchetti*, the question before the court was whether Mr. Pacchetti intended to harm the boy. Unlike in *Pacchetti*, here the Court needs only to consult the elements of the tort for which the EFCA is being sued. Doe can only prevail on his intentional-failure-to-supervise-clergy claim if he proves that the EFCA knew harm was certain or substantially certain to result from its failure to supervise Friz. *See Doe 122*, 620 S.W.3d at 80–81. Proving this element would necessarily trigger the expected-or-intended exclusion of Brotherhood's policy. Therefore, the policy cannot possibly cover intentional-failure-to-supervise-clergy claims and no duty to defend exists.

### 3. The reasonable-expectations and illusory-coverage doctrines do not apply

Relatedly, the EFCA and Doe also argue that if the Court applies the expected-or-intended exclusion to the sexual-acts coverage, then the Court should apply the "reasonable expectations or illusory coverage doctrines." Doc. 43 at p. 9; Doc. 44 at p. 11. The Court first notes that "[t]he doctrine of illusory coverage applies only when part of the premium is

specifically allocated to a particular type or period of coverage and that coverage turns out to be functionally nonexistent." *United Fire & Cas. Co. v. Fid. Title Ins. Co.*, 258 F.3d 714, 719 (8th Cir. 2001) (applying Minnesota law) (internal citations omitted); *see also H & R Block, Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 546 F.3d 937, 942 (8th Cir. 2008) (applying Missouri law).

Neither the EFCA nor Doe can show that the application of the expected-or-intended exclusion to the sexual-acts-liability coverage renders it "functionally nonexistent." Instead, both cite cases that reflect the mundane principle that contracts cannot both promise something and take it away without being illusory. *See, e.g.*, *Behr v. Blue Cross Hosp. Serv., Inc.*, 715 S.W.2d 251, 256 (Mo. 1986). The policy here takes away nothing that it promises. As Brotherhood concedes, the policy covers a variety of vicarious-liability and negligence claims that, outside of Missouri, plaintiffs can bring against religious organizations for clergy misconduct. Doc. 49 at p. 8. Indeed, the insured is a Minnesota resident, where a plaintiff could bring such a claim against a religious organization. *See Olson v. First Church of Nazarene*, 661 N.W.2d 254, 260 (Minn. Ct. App. 2003). The fact that the policy excludes coverage for intentional torts does not render its protections "functionally nonexistent." Nor does this fact upset the reasonable expectations of the parties.

The reasonable-expectations doctrine honors the objective reasonable expectations of the beneficiaries to insurance contracts even though a thorough study of the policy provisions would have negated those expectations. *Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 381 (Mo. 1991). However, that doctrine only applies to *ambiguous* contracts of adhesion. *Id.* at 382; *see Kastning v. State Farm Ins. Cos.*, 821 N.W.2d 621, 627–28 (Minn. Ct. App. 2012) (noting the similar rule in Minnesota). No defendant has claimed that the policy is a contract of adhesion or that the EFCA suffered from an imbalance of bargaining power when it purchased

the policy. Further, as discussed above, the contract is not ambiguous. The reasonable-expectations doctrine simply does not apply.

For these reasons, the Court grants Brotherhood judgment on the pleadings on count 1. The parties did not brief Brotherhood's second count against the EFCA, but because the declaration prayed for in count 1 fully resolves Brotherhood's dispute with the EFCA, in that the Court finds Brotherhood does not owe the EFCA a duty to defend or indemnify against Doe's intentional-failure-to-supervise-clergy claim, the Court dismisses count 2 as moot.

**C.    Brotherhood does not owe a duty to indemnify Friz, but it may owe him a duty to defend**

Brotherhood also seeks a declaration absolving it of any duty to defend or indemnify Adolf Friz. While the Court agrees that Brotherhood does not owe a duty to indemnify Friz, the policy may impose on Brotherhood a limited duty to defend Friz.

**1.    Brotherhood does not owe Friz a duty to indemnify**

Brotherhood asserts two alternative arguments why it does not owe Friz a duty to indemnify. First, Brotherhood argues that Friz is not a "covered person" under the policy and "the Sexual Acts Liability Coverage applies only to sums a 'covered person' becomes legally obligated to pay." Doc. 34 at p. 12. Second, Brotherhood asserts that even "[i]f Friz qualified as a 'covered person,' then the expected-or-intended exclusion would apply" and relieve Brotherhood of any obligations to Friz, for the same reasons that the exclusion relieves it of its obligations to the EFCA. *Id.* at pp. 12–13. Because Brotherhood has conceded for purposes of the motion that Friz is a covered person, the Court does not address Brotherhood's first argument. As to the second, the Court agrees that if Friz is a covered person, then the expected-or-intended exclusion would absolve Brotherhood of any duty to indemnify him against any potential damages because all of the claims Doe brought against Friz involve intentional acts.

14

But whether Brotherhood owes Friz a duty to indemnify does not end the inquiry regarding Brotherhood's potential obligations to Friz.

### 2. Brotherhood may owe Friz a duty to defend

The parties fail to address whether the limited-defense-coverage provision of the policy's sexual-acts-liability coverage obligates Brotherhood to defend Friz. Even though Brotherhood does not owe Friz a duty to indemnify, it may still owe him a duty to defend as specifically provided for in the policy. As noted, for purposes of the motion, Brotherhood accepts Doe's allegation in the underlying lawsuit that Friz was an employee—a "covered person" under the policy—of the EFCA. Doc. 34 at p. 12 n.4. The EFCA, for its part, denies an employer-employee relationship with Friz. Doc. 43 at p. 15. Friz has not filed a response to Brotherhood's motion for judgment on the pleadings. However, Friz has denied that he assaulted Doe. *See* Friz Answer at ¶¶ 44, 45, 47, *Doe v. Friz*, No. 20SL-CC05266 (St. Louis Cnty. Cir. Ct. Dec. 17, 2020); *see also Porous Media Corp.*, 186 F.3d at 1079 (the Court may consider materials in the "public record" when ruling on a motion for judgment on the pleadings). The defense coverage provided by the sexual-acts-liability coverage provides that:

> The commission of a **sexual act** will not be considered to have occurred within the scope of anyone's delegated authority, but if a person otherwise covered herein denies involvement in the **sexual act**, then **we** will provide the alleged perpetrator with the following limited Defense Coverage:
>
> **We** agree to provide the Defense Coverage in the Commercial Liability Coverage Form (GL-100) of this policy to **alleged perpetrators**, but only with respect to an alleged **sexual act** which occurs in the **coverage territory** during the **policy period**, and only until such time as one of the following events occur:
>
> 1. the **alleged perpetrator** enters into a plea agreement; pleads guilty or no contest; or is criminally convicted in relation to the **sexual act**; or
>
> 2. a verdict is rendered against the **alleged perpetrator** in a civil court in relation to the **sexual act**; or

15

> 3.  the **alleged perpetrator** admits to anyone that he or she engaged in the **sexual act**; or
>
> 4.  the **alleged perpetrator** is implicated by clear and convincing physical evidence (such as, photographic evidence, computer logs, DNA evidence, etc.) that he or she engaged in the sexual act.

Doc. 1-2 at pp. 165–66.

The Defense Coverage explicitly states that the limited coverage for defense does not cover indemnity for loss or damages that would arise from a judgment finding the alleged perpetrator responsible for the sexual act. *Id.* at p. 166.  Further, the coverage defines "alleged perpetrator" as "a covered person accused of committing a sexual act." *Id.* at 163.

Neither Brotherhood nor the EFCA claims that Friz has been convicted of any crime related to the allegations in the underlying lawsuit and no verdict has been rendered against Friz in the underlying lawsuit.  Friz has denied the conduct alleged in the underlying lawsuit, and neither Brotherhood nor the EFCA has shown that clear and convincing physical evidence implicates Friz in the commission of a sexual act.

Further, the expected-or-intended exclusion does not appear to exclude this limited-defense coverage for Friz.  The exclusion applies to losses expected or intended by "any insured or by any covered person." Doc. 1-2 at p. 235.  A covered person only includes employees and others "while acting on [the insured's] behalf and within the scope of their delegated authority," *id.* at p. 163, and the limited-defense-coverage provision of the sexual-acts-liability coverage provides that "the commission of a sexual act will not be considered to have occurred within the scope of anyone's delegated authority, but if a person otherwise covered herein denies involvement in the sexual act, then we will provide the alleged perpetrator with the following limited Defense Coverage . . . ." *Id.* at pp. 165–66.

Brotherhood has asked the Court for a declaration that it "has no duty to defend or indemnify . . . Mark Friz in connection with the Underlying Lawsuit . . . ." Doc. 33 at p. 1. If Friz is a covered person, which the EFCA denies but which Brotherhood concedes for purposes of the motion, then the possibility exists that Brotherhood owes Friz a duty to defend. To the extent Brotherhood seeks a declaration that it does not owe Friz a duty to defend, the Court denies the motion.

## IV.   Conclusion

The Court grants, in part, and denies, in part, Brotherhood Mutual Insurance Company's [33] Motion for Judgment on the Pleadings. The Court grants the motion as to count 1. The Court dismisses count 2 as moot. The Court denies the motion as to counts 3, 4, 5, and 6.

The Court recognizes that these rulings may impact the parties' dispositive motions and therefore on its own motion extends their dispositive-motion deadline from November 15, 2021, to November 22, 2021; any dispositive motions presently on file may be modified and re-filed by the November 22 deadline, as well. All other deadlines remain in effect.

So Ordered this 12th day of November 2021.

_SLR. CR_____
**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**